IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>PANIOLO CABLE COMPANY, LLC,<br><br>Debtor.<br>_____<br><br>MICHAEL KATZENSTEIN, as Chapter 11 Trustee,<br><br>            Plaintiff,<br>  vs.<br><br>SANDWICH ISLES COMMUNICATIONS, INC.,<br><br>            Defendant. | Civ. No. 21-00499 JMS-WRP<br><br>ORDER GRANTING THE UNITED STATES' MOTION TO QUASH PAU LOA VENTURES, INC.'S WRIT OF EXECUTION |

**ORDER GRANTING THE UNITED STATES' MOTION TO QUASH PAU LOA VENTURES, INC.'S WRIT OF EXECUTION**

**I. INTRODUCTION**

This Order addresses the United States' Motion to Quash Pau Loa Ventures, Inc.'s Writ of Execution ("Motion to Quash"), which was originally filed in the U.S. Bankruptcy Court for the District of Hawaii. *See* ECF No. 1-3 at PageID ## 16-26 (Motion to Quash filed in Adversary No. 19-90022 in Bankruptcy Court Case No. 18-01319 RJF). After the Motion to Quash was fully

briefed by the United States and Pau Loa Ventures, Inc. ("Pau Loa"), *see* ECF Nos. 1-2 to 1-6, the Bankruptcy Court recommended that this District Court withdraw the reference under 28 U.S.C. § 157(d) and decide the Motion to Quash.  ECF No. 1-1.  This court adopted that recommendation on January 31, 2022.  ECF No. 4.  The court, having reviewed the briefing, decides the matter under Local Rule 7.1(c) without a hearing.  The court GRANTS the Motion to Quash.

## II.  BACKGROUND

In a related case before this court, Civil No. 18-00145 JMS-RT, the United States foreclosed on a series of loans and promissory notes it made with Sandwich Isles Communications ("Sandwich Isles") from 1997 to 2001.  *See United States v. Sandwich Isles Commc'ns*, 398 F. Supp. 3d 757, 764-65 (D. Haw. 2019); ECF No. 1-3 at PageID # 28.[1]  The United States obtained a final order finding Sandwich Isles in default of those loans.  *See* 398 F. Supp. 3d at 773; *United States v. Sandwich Isles Commc'ns*, 2020 WL 544692, at *9 (D. Haw. Feb. 3, 2020) (order granting final partial judgment under Federal Rule of Civil Procedure 54(b)).[2]  A judgment of $138,557,635.82 was entered in favor of the

---

[1] Unless otherwise specified, all ECF citations are to the docket in the present action (i.e., Civ. No. 21-00499 JMS-WRP).

[2] The Ninth Circuit affirmed those orders on January 20, 2021.  *See United States v. Sandwich Isles Commc'ns*, 833 F. App'x 718 (9th Cir. Jan. 20, 2021) (mem.).

2

United States against Sandwich Isles (the "Judgment").  *See* ECF No. 225 in *United States v. Sandwich Isles Commc'ns*, Civ. No. 18-00145 JMS-RT (February 18, 2020 Order Amending Judgment); ECF No. 226 in Civ. No. 18-00145 JMS-RT (February 18, 2020 Amended Partial Judgment of $138,557,635.82 in favor of the United States).  The United States recorded the Judgment and obtained a writ of execution on May 1, 2020, levying certain property of Sandwich Isles.  *See* ECF No. 260 in Civ. No. 18-00145 JMS-RT.  It is undisputed that the assets of Sandwich Isles are insufficient to satisfy that Judgment.  *See, e.g.*, ECF No. 1-3 at PageID # 30.

The United States' loans were secured by a March 2, 1998 Mortgage, Security Agreement and Financing Statement ("1998 Mortgage").  *See id.* at PageID ## 28-29; *id.* at PageID ## 75-77.  The 1998 Mortgage pledged as collateral:

> All right, title and interest of [Sandwich Isles] in and to the Existing Facilities and buildings, plants, works, improvements, structures, estates, grants, franchises, easements, rights, privileges and properties real, personal and mixed, tangible or intangible, of every kind or description, now owned or leased by [Sandwich Isles] or which may hereafter be owned or leased, constructed or acquired by [Sandwich Isles], wherever located, and in and to all extensions and improvements thereof and additions thereto, including all buildings, plants, works, structures, improvements, fixtures, apparatus, materials, supplies, machinery, tools, implements, poles, posts,

> crossarms, conduits, ducts, lines, whether underground or overhead or otherwise, wires, cables, exchanges, switches including, without limitation, host switches and remote switches, desks, testboards, frames, racks, motors, generators, batteries and other items of central office equipment, pay stations, protectors, instruments, connections and appliances, office furniture and equipment, work equipment and any and all other property of every kind, nature and description, used, useful or acquired for use by [Sandwich Isles] in connection therewith and including, without limitation, the property described in the following property schedule . . . .

ECF No. 1-3 at PageID # 80 (RUS-0000189). As described by the United States in its Motion, the 1998 Mortgage also pledged:

> "grants, privileges, rights of way and easements," "any and all licenses, franchises, ordinances, privileges and permits," "any and all contracts," "any and all other accounts, contract rights, and general intangibles . . . , and all stock, bonds, notes, debentures, commercial paper, subordinated capital certificates, securities, obligations of or beneficial interests or investments," and "all other property, real or personal, tangible or intangible, of every kind, nature, and description," including "rents, income, revenues, proceeds, profits and benefits," with an exclusion for "automobiles, trucks, trailers, tractors or other vehicles."

*Id.* at PageID # 18 (quoting ECF No. 1-3 at PageID ## 80-82 (RUS-0000189-0000191)). Mortgage supplements and amendments were filed "indicating that the collateral secured six notes for debt owed to [the United States] in an aggregate

principal amount of $166,749,150.00." *Id.* (citing ECF No. 1-3 at PageID # 162 (RUS-0000241)).

   The United States perfected its security interest on October 7, 1998 by filing and recording the 1998 Mortgage with the Hawaii Bureau of Conveyances ("Bureau") as a financing statement of a transmitting utility.  *Id.* at PageID ## 75-77.  It also recorded the mortgage supplements in 1999 and 2001 as financing statements of a transmitting utility.  *Id.* at PageID ## 122, 124; ECF No. 1-4 at PageID ## 152-53.

   Meanwhile, Michael Katzenstein, as the bankruptcy trustee of Paniolo Cable Company, LLC ("Paniolo")—which was in chapter 11 bankruptcy proceedings, and was owed substantial amounts from Sandwich Isles—obtained an Order and Judgment of $256,552,854.00 plus interest (the "Katzenstein Judgment") against Sandwich Isles in Bankruptcy Court adversary proceeding 19-90022 in Paniolo's bankruptcy case.  *See* ECF No. 1-5 at PageID ## 278-79.  The Katzenstein Judgment was recorded with the Bureau on January 2, 2020—which was before the United States had obtained its $138,557,635.82 Judgment against Sandwich Isles (obtained on February 18, 2020)—and Katzenstein assigned it to Pau Loa on June 17, 2020.  *Id.* at PageID # 281.

5

On October 25, 2021, the Clerk of the Bankruptcy Court issued a Writ of Execution in favor of Pau Loa, directing the U.S. Marshal to levy property of Sandwich Isles in an attempt to satisfy the Katzenstein Judgment. *Id.* at PageID # 287. The property to be levied was described as:

> All fixtures, including: infrastructure facilities, conduits, manholes, handholes, and towers; and equipment, including copper and fiber optic and telecommunication cables, copper and fiber optic transmission, multiplexing, circuit switching, circuit transport equipment, IP routing and switching equipment, test equipment, power systems, cooling systems, security systems, network management systems, cross connects and cross connect panels, fixed and located in or under buildings or buried in the land upon all of the real property locations described hereinafter . . . .

*Id.* at PageID # 288.

On November 1, 2021, the United States filed its Motion to Quash, ECF Nos. 1-3 and 1-4, seeking to prevent enforcement of Pau Loa's Writ of Execution. Pau Loa filed its Opposition on December 3, 2021, ECF No. 1-5, and the United States filed its Reply on December 10, 2021, ECF No. 1-6. As set forth earlier, this court withdrew the reference from the Bankruptcy Court on January 31, 2022. ECF No. 4.

## III. ANALYSIS

The Motion to Quash argues, among other points, that the property identified in Pau Loa's Writ of Execution is fully encumbered by the United States' senior lien and that Sandwich Isles has no remaining equity in the property. ECF No. 1-3 at PageID # 17. The Motion contends that the United States' "lien has been perfected since the recording of [the United States'] Mortgage on October 7, 1998, as supplemented and recorded on July 2, 2001, as against the property of a transmitting utility." *Id.* at PageID # 22. And it points out that any execution sale "on the piecemeal Sandwich Isles assets Pau Loa attempts to levy upon . . . must occur subject to and without disturbing [the United States'] superior lien." *Id.* at PageID # 20.

In its Opposition, Pau Loa argues that the United States' security interest was not perfected because "the great majority of [Sandwich Isles'] real estate interests and any fixtures affixed to them" were "acquired . . . after the [United States'] mortgage was signed, and neither the real estate nor the fixtures are described in any recorded amendment to the mortgage." ECF No. 1-5 at PageID # 272. It relies on Hawaii Revised Statutes ("HRS") § 506-3, which is titled "After-acquired real property and fixtures," and provides in part that "[t]he mortgage shall operate only as a contract between the parties with respect to, and

shall not create a lien upon real property or fixtures acquired in any manner by the mortgagor subsequent to the execution of the mortgage . . . ." Pau Loa thus contends that its lien, based on the Katzenstein Judgment recorded prior to the United States' Judgment, is first in priority. ECF No. 1-5 at PageID # 273.

But, as the United States points out, HRS § 506-3 does not apply to Pau Loa's Writ of Execution. *See* ECF No. 1-6 at PageID ## 293, 298. The property at issue is "[a]ll fixtures, including: infrastructure facilities, conduits, manholes, handholes, and towers; and equipment," etc., at specified locations. ECF No. 1-5 at PageID # 288. The priority of security interests in "fixtures" is governed by HRS §§ 490:9-334 and 490:9-604—not HRS § 506-3—in accordance with specific statutory language. *See, e.g.*, HRS § 506-1(b) ("*Except as otherwise provided in sections 490:9-334 and 490:9-604* of the Uniform Commercial Code [('UCC')] with respect to security interests in fixtures, a mortgage which secures future advances . . . shall be superior to any subsequently recorded mortgage . . . ." (emphasis added)).

A security interest in fixtures is perfected when a financing statement is filed, *see* HRS § 490:9-310(a), and for a "transmitting utility" (such as Sandwich

Isles[3]), "[t]he financing statement also constitutes a fixture filing as to the collateral indicated in the financing statement which is or is to become fixtures," HRS § 490:9-501(b).[4]  And so, the United States perfected its security interest by recording its March 2, 1998 "Mortgage, Security Agreement and Financing Statement Mortgage" with the Bureau on October 7, 1998 as a financing statement of a transmitting utility.  ECF No. 1-3 at PageID ## 75-77.  *See In re Hawaiian Telecom Commc'ns, Inc.*, 2009 WL 2575663, at *7 (Bankr. D. Haw. Aug. 20, 2009) ("Plaintiff filed a financing statement and transmitting utility filing statements with the Hawaii Bureau of Conveyances . . . as required under [HRS] § 490: 9-501.  Plaintiff has a valid and perfected security interest in all of the Debtors' fixtures.").[5]  The United States did so again by recording its mortgage supplements with the Bureau as financing statements of a transmitting utility on

---

[3] Sandwich Isles is a "transmitting utility" under HRS § 490:9-102 (defining "transmitting utility" as including "a person primarily engaged in the business of . . . transmitting communications electrically, electromagnetically, or by light"); *Sandwich Isles*, 398 F. Supp. 3d at 763 ("Sandwich Isles was formed in the mid-1990s to provide telecommunications services to native Hawaiians on Hawaiian home lands.").

[4] HRS § 490:9-102 defines "fixtures" as "goods that have become so related to particular real property that an interest in them arises under real property law," and a "fixture filing" as "the filing of a financing statement covering goods that are or are to become fixtures and satisfying section 490:9-502(a) and (b).  The term includes the filing of a financing statement covering goods of a transmitting utility which are or are to become fixtures."

[5] Under HRS § 490:9-515(f), "[i]f a debtor is a transmitting utility and a filed initial financing statement so indicates, the financing statement is effective until a termination statement is filed."  There is no indication that a termination statement was filed, and so the financing statement remains in effect.

July 26, 1999, ECF No. 1-3 at PageID # 122, and on July 2, 2001, *id.* at PageID # 152. *See also* ECF No. 1-4 at PageID # 153 (mortgage supplement providing: "This instrument grants a security interest in a transmitting utility. The debtor as mortgagor is a transmitting utility. This instrument contains provisions that cover real and personal property, after-acquired property, proceeds, future advances and future obligations."). In contrast, HRS § 506-3—again, which does not specifically govern security interests in fixtures covered by HRS § 490:9-334—concerns "[t]he mortgage" specifically as that term is used in HRS § 506-1(a).[6]

---

[6] HRS § 506-1 provides:

> (a) Every transfer of an interest in real property or fixtures made as security for the performance of another act or subject to defeasance upon the payment of an obligation, whether the transfer is made in trust or otherwise, is to be deemed a mortgage and shall create a lien only as security for the obligation and shall not be deemed to pass title.
>
> (b) A mortgage may secure the repayment of past debt, a debt incurred at the time the mortgage is executed, or a debt incurred for advances which may be made by the mortgagee subsequent to the execution of the mortgage even though the mortgagee is under no contractual duty to make these advances. Except as otherwise provided in sections 490:9-334 and 490:9-604 of the Uniform Commercial Code with respect to security interests in fixtures, a mortgage which secures future advances, up to but not exceeding the maximum amount of future advances stated in the mortgage, shall be superior to any subsequently recorded mortgage, lien, or other encumbrances or conveyance, other than liens for real property taxes and assessments for public improvements, even though the subsequently recorded mortgage, lien, or other encumbrance or conveyance is recorded prior to the date upon which any advance or advances have been made.

Further, as the United States discerns in its Reply, *see* ECF No. 1-6 at PageID ## 294-95, HRS § 490:9-334(e) provides two independent reasons why its perfected security interest has priority over the Katzenstein Judgment.

Section 490:9-334 provides in pertinent part:

(e) A perfected security interest in fixtures has priority over a conflicting interest of an encumbrancer or owner of the real property if:

(1) The debtor has an interest of record in the real property or is in possession of the real property and the security interest:

(A) Is perfected by a fixture filing before the interest of the encumbrancer or owner is of record; and

(B) Has priority over any conflicting interest of a predecessor in title of the encumbrancer or owner;

. . . [or]

(3) The conflicting interest is a lien on the real property obtained by legal or equitable proceedings after the security interest was perfected by any method permitted by this article[.]

The United States has satisfied both § 490:9-334(e)(1) and § 490:9-334(e)(3). It has satisfied paragraph (e)(1) by filing a "financing statement of a transmitting utility" which is a "fixture filing" under HRS § 490:9-501(b). This occurred in 1998, well before the Katzenstein Judgment was recorded in the Bureau on January 2, 2020. And the United States' fixture filing in 1998 also takes

priority over the Katzenstein Judgment under paragraph (e)(3) because that Judgment was "obtained by legal or equitable proceedings after the [United States'] security interest was perfected." *See* Comment 9 to Official Text of the UCC § 490:9-334.[7]

Finally, the description in the 1998 Mortgage (*see* ECF No. 1-3 at PageID # 80 (RUS-0000189)) sufficiently identifies the collateral that served as security for the United States' loans. *See* HRS § 490:9-108(a) ("Except as otherwise provided in [inapplicable] subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described."); *In re Lull*, 386 B.R. 261, 266 (Bankr. D. Haw. 2008) ("Under [HRS] section 490:9-108(b), collateral is reasonably identified if the identification is by: '(1) specific listing; (2) category; (3) [and] . . . a type of

---

[7] Comment 9, titled "Priority in Fixtures: Judicial Liens," provides:

> Subsection (e)(3), which follows former Section 9-313(4)(d), adopts a first-in-time rule applicable to conflicts between a fixture security interest and a lien on the real property obtained by legal or equitable proceedings. Such a lien is subordinate to an earlier-perfected security interest, regardless of the method by which the security interest was perfected. Judgment creditors generally are not reliance creditors who search real-property records. Accordingly, a perfected fixture security interest takes priority over a subsequent judgment lien or other lien obtained by legal or equitable proceedings, even if no evidence of the security interest appears in the relevant real-property records. Subsection (e)(3) thus protects a perfected fixture security interest from avoidance by a trustee in bankruptcy under Bankruptcy Code Section 544(a), regardless of the method of perfection.

collateral defined in [the UCC].'  The security agreement signed by Lull identified the collateral by category and also by UCC-defined type.  *See* [HRS] § 490:9-102.  It therefore sufficiently described the collateral to which Gardiner's security interest attached.").

## IV.  CONCLUSION

The court GRANTS the United States' Motion to Quash Pau Loa's Writ of Execution.  The Writ of Execution would affect property on which the United States has a perfected security interest that is senior to the Katzenstein Judgment.  The Writ is QUASHED and may not be enforced.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 3, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Katzenstein v. Sandwich Isles Commc'ns, Inc.*, Civ. No. 21-00499 JMS-WRP, Order Granting the United States' Motion to Quash Pau Loa Ventures, Inc.'s Writ of Execution